UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL BADILLO, JR.,

                Plaintiff,

– against –

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

                Defendant.

**OPINION & ORDER**

18 Civ. 8414 (ER)

RAMOS, D.J.:

        Samuel Badillo, Jr. brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB"). Pending before the Court are the parties' cross-motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Docs. 14, 18. On November 7, 2018, Magistrate Judge Kevin Nathaniel Fox issued a Report and Recommendation (the "R&R"), recommending that the Court grant Badillo's motion, deny the Commissioner's motion, and remand the case to the Commissioner for the calculation of benefits only. Doc. 21. The Commissioner filed timely objections to the R&R. Doc. 24. For the reasons stated below, Badillo's case is REMANDED to the Commissioner for further administrative proceedings consistent with this Opinion.

**I.    BACKGROUND**

    **A. Statutory Scheme**

        An individual is considered "disabled" under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Additionally, a claimant seeking DIB must

demonstrate that she became disabled before the date on which she was last insured. *Id.* §§ 416(i), 423(a) & (c)(1). In making a disability determination, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant . . . ; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citations omitted).

In order to determine whether an individual is disabled, the Commissioner follows the five-step sequential evaluation process set out in 20 C.F.R. § 404.1520. At step one, the Commissioner determines whether the individual is engaged in any "substantial gainful activity"; if she is, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i), (b). At step two, the Commissioner determines whether the individual has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities"; if she does not have such an impairment, she is not disabled. *Id.* § 404.1520(c), (a)(4)(ii). At step three, the Commissioner determines whether the individual has an impairment that meets or equals one of those listed in Appendix 1; if she does, she is disabled. *Id.* § 404.1520(a)(4)(iii), (d). If she does not, the Commissioner will assess and make a finding about the individual's residual functional capacity ("RFC")—or "the most [she] can still do despite [her] limitations"—based on all the relevant evidence in her case record. *Id.* §§ 404.1545(a)(1), 404.1520(e). At step four, the Commissioner determines whether, considering her RFC, the individual can still do her past relevant work; if she can, she is not disabled. *Id.* § 404.1520(a)(4)(iv), (f). Finally, at step five, the Commissioner determines whether, considering her RFC, age, education, and work experience, the individual can make the adjustment to other work; if she cannot make the adjustment to other work, she is disabled, and if she can, she is not. *Id.* § 404.1520(a)(4)(v), (g). "If at any step a finding of disability or nondisability can be

made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

**B. Procedural History**

Badillo originally filed an application for DIB on February 24, 2010, alleging disability since May 20, 2009. Doc. 13 at 132–38. The application was denied on June 4, 2010. *Id*. at 67–74. Badillo timely filed a request for a hearing and appeared before an administrative law judge ("ALJ") on June 9, 2011. In a decision dated July 11, 2011, the ALJ found Badillo capable of performing a range of light work. *Id*. at 7–22. After the Appeals Council denied Badillo's request for review, the case was appealed to a federal district court, where the parties stipulated to remand. *Id.* at 522. A second hearing was held on June 4, 2013. In a decision dated January 2, 2014, the ALJ again denied Badillo's application for DIB. *Id*. at 420–44. This decision was again appealed to the district court, where the parties again stipulated to remand. *Id.* at 910–13.

Upon remand, the Appeals Council vacated the ALJ's January 2, 2014 decision and remanded to an ALJ for resolution of the following issues:

- The hearing decision indicates that the claimant has the residual functional capacity for work-related functions that indicate the claimant "can frequently handle, finger and reach in all direction with the right upper extremity." In making this determination, the ALJ discounted evidence from a medical expert, Dr. Axline, who indicated the claimant was unable to reach overhead, due to limited abduction. In addition, there are multiple opinions in the record, which support Dr. Axline's notation regarding claimant's inability to reach overhead. Therefore, further evaluation of the claimant's ability to reach overhead is necessary.

Upon remand, the ALJ will:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence.

- Give further consideration to the treating and nontreating source opinions pursuant to the provisions of 20 C.F.R. 404.1527 and Social Security

3

> Rulings 96–2p and 96–5p, and explain the weight given to such opinion evidence, specifically with respect to the claimant's ability to utilize his right upper extremity. As appropriate, the Administrative Law Judge may request the treating and nontreating source to provide additional evidence and/or further clarification of the opinion.
>
> - Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.
>
> - If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

*Id.* at 916–17 (internal citations omitted). A third hearing was held on April 20, 2017, this time before a different ALJ. The ALJ again denied Badillo's application. *Id.* at 818–45. It is this decision that is on appeal here.

On September 17, 2018, Badillo commenced the instant action. Doc. 1. On April 2, 2019, Badillo moved for judgment on the pleadings. Doc. 14. On May 13, 2019, the Commissioner cross-moved for judgment on the pleadings. Doc. 18.

**C. The ALJ's Decision**

The ALJ, following the five-step process laid out in 20 C.F.R. § 404.1520A, determined that Badillo was not disabled under the Act. Doc. 13 at 818–45. The ALJ found that Badillo last met the insured status requirement of the Social Security Act on December 31, 2014. Doc. 13 at 823. At step one, the ALJ determined that Badillo had not engaged in substantial gainful activity from May 20, 2009, the alleged date of onset of disability, through December 31, 2014. *Id.* at 824. At step two, the ALJ found that Badillo had the following severe impairments: "status-post cervical fusion and cervical spondylosis, lumbosacral disc herniation and degenerative disc disease, cubital tunnel

syndrome, status-post right knee meniscus tear and arthroscopy, status-post right shoulder arthroscopy with osteoarthritis, sleep apnea, asthma and obesity." *Id.* However, at step three, the ALJ found that Badillo did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1, which would have conclusively established disability. *Id.* Before proceeding to step four, the ALJ determined Badillo's RFC. After considering the entire record, the ALJ found that Badillo had the RFC to perform light work, except that he could

> occasionally climb ramps and stairs, but cannot climb ladders, ropes and scaffolds . . . can occasionally balance, stoop, crouch and kneel, but cannot crawl . . . should avoid unprotected heights and hazardous machinery . . . can frequently flex, extend and rotate the neck . . . can frequently reach, but can perform no overhead reaching, with the right upper extremity . . . can frequently handle and finger with the right hand and wrist . . . must also avoid exposure to respiratory irritants such as dust, fumes and gases.

*Id.* At step four, the ALJ determined that Badillo would be unable to perform any past relevant work, but at step five, he determined that there were jobs available in the general economy that Badillo could perform. *Id.* at 833–34.

This case primarily concerns the ALJ's RFC assessment. Specifically, the parties dispute whether the ALJ afforded the correct weight to treating and non-treating physicians and whether the assessment was supported by substantial evidence. In making his assessment, the ALJ considered the treatment records and notes of Dr. Cammissa, Dr. Leff, Dr. Ji, Dr. Heise, Dr. Cohen, and Dr. Edynak; as well the medical opinions of Dr. Edynak, Dr. Cammissa, Dr. Ji, Dr. Leff, and Dr. Axline.[1]

*Treatment Records*

The ALJ first considered records of office examinations by Dr. Cammissa. These indicated that, though Badillo had a history of neck pain, he had responded well to treatment, including injections. *Id.* at 825–26. These records also indicated "a possible

---

[1] The ALJ also considered treatment records and opinions of Dr. Fiore, Dr. Keltz, and Dr. Heftier. *Id.* at 832–33. However, these are not at issue in this litigation.

5

element of cubital tunnel syndrome," but "5/5 motor strength throughout his major muscle groups, with intact sensation." *Id.* at 826. The ALJ noted, for example, that "in May 2012, although the claimant reported a recurrence of upper extremity symptoms, physical examination remained unchanged and found the claimant neurologically intact with the ability to perform heel and toe walking." *Id.* "During th[is] visit, [Badillo] noted that yearly epidural steroid injections were 'very helpful.'" *Id.*

Badillo also received pain management treatment, including injections, from Dr. Leff and Dr. Ji. *Id.* Office visit notes from Dr. Leff and Dr. Ji are in keeping with Dr. Cammissa's notes, showing that Badillo felt his pain "was well controlled with a combination of medication and epidural injections." *Id.* at 827. "Examinations from these treating physicians revealed some restricted right shoulder and cervical motion and muscle tenderness, but consistently indicated good strength, stable neurological findings and some ongoing, but improved pain." *Id.* The ALJ found that "[o]verall, when assessing a function-by-function assessment of basic work activities, the exams from Drs. Leff and Ji provide support for the . . . residual functional capacity." *Id.*

The ALJ also considered records from Dr. Heise, who Badillo saw for two neurologic consultations in 2010. *Id.* At the first of these, in April, Dr. Heise found that Badillo's "right arm strength was globally about 4 to 4+/5," but that his "left arm was normal in strength, and all muscle groups to [his] legs were normal." *Id.* He also found that Badillo was "[a]ble to stand on his heels and his toes, . . . was quite muscular in appearance and had no focal atrophy." *Id.* At the second, in October, Dr. Heise found that "there was normal coordination and normal movements to all of [Badillo's] four extremities and examination revealed normal fine coordination of the hands." *Id.* Dr. Heise further noted that Badillo "had no muscle atrophy, but instead, . . . was 'quite muscular.'" *Id.* The ALJ found that these "generally mild neurologic deficits" did not support complete disability. *Id.* at 828. Dr. Heise's notes "in no way demonstrate that the claimant was prevented from engaging in activities consistent with light work and could

6

at least frequently flex, extend and rotate the neck and generally use the right upper extremity including the ability to frequently handle and finger." *Id.*

Dr. Cohen's treatment notes also corroborated this. In particular, "[n]o limitations [were] placed on [Badillo's] ability to lift, carry, or reach . . . due to a right shoulder condition. Nor are there any deficits noted with respect to the claimant's ability to kneel, climb, bend, walk or maintain his stance from a right knee impairment." *Id.* at 828. The ALJ concluded that "[o]verall, these reports provide substantial evidence that the claimant could at least frequently reach in all directions with the right upper extremity and at least occasionally stoop and crouch." *Id.*

The ALJ also noted that "Dr. Edynak's consultative evaluation was without alarming findings. [Badillo] appeared in no acute distress, maintained a normal stance and walked with a normal gait." *Id.* at 829. These examination notes were consistent with the evaluations of Dr. Cohen and the physical exams of both Drs. Ji and Jeff. *Id.* The ALJ further found that Badillo "was unencumbered in his ability to oppose his thumb to all fingers and could manipulate a zipper and a button and even tie without noted difficulty." *Id.*

In general, the ALJ found that

> mild, more subjectively based deficits to strength and sensation have been noted by treating and examining physicians, as well as muscle spasm and some limitation to spinal, right shoulder and right knee motion; however, records fail to document chronic or significant deficits in sensation, motor power and reflexes consistent with the significant pain and stiffness reported by the claimant.

*Id.* at 828. Similarly, "there are no records substantiating the severe degree of numbness, stiffness, pain and weakness consistent with the highly limited functional abilities reported, including the inability to utilize his hands and fingers for grasping and holding, or to sit, stand or walk for extended periods." *Id.* at 829.

7

*Medical Opinions*

Dr. Edynak opined that Badillo "had mild limitations with walking, standing, climbing stairs, kneeling, squatting, heavy lifting and carrying," as well as "moderate to marked limitations in reaching, carrying and reaching overhead with marked limitations to turning his head and looking up." *Id.* at 829. Moreover, Dr. Edynak opined that "[m]ild to moderate limitations were indicated for handling objects and fine manipulations." *Id.* The ALJ gave minimal weight to Dr. Edynak's opinion that Badillo had difficulty turning his head and looking up because he found it was inconsistent with the other evidence of record, "including progress notes of Dr. Cammissa and Drs. [L]eff and Ji." *Id.* at 830. However, he noted that "[i]n any case, such restriction has been provided for in the residual functional capacity with limitations for frequent neck motions." *Id*. The ALJ also gave little weight to Dr. Edynak's opinion that Badillo had "moderate to marked limitations in reaching and carrying." *Id.* The ALJ found that these were inconsistent with the clinical examinations of Dr. Heise, Dr. Leff, and Dr. Ji, "indicating largely intact neurologic function, good coordination and balance, a normal gait and stance and the absence of muscle atrophy." *Id.* As such, the ALJ found that "the degree of restriction assessed by Dr. Edynak" was neither supported by the medical record, nor by Badillo's reported activities of daily living. *Id.*

Dr. Cammissa opined that Badillo was "100% disabled and unable to return to work." *Id.* at 831. However, the ALJ found that this opinion was "not well supported by [Dr. Cammissa's] own objective examinations." *Id.* The ALJ further found that this evidence was not well supported by substantial evidence "including the absence of significant ongoing deficits in sensation or motor strength and findings on imaging studies which revealed . . . 'no significant evidence' of spinal cord compromise or exiting nerve root compromise." *Id.* The ALJ noted that Dr. Cammissa's opinion "was prepared for the purposes of another government agency and was therefore geared to a different statutory test of disability." *Id.*

The ALJ also granted Dr. Leff's and Dr. Ji's opinions very little weight, even though they were Badillo's treating physicians. *Id.* at 832. Dr. Ji and Dr. Leff had indicated that Badillo was "limited to a very restrictive functional ability consistent with the inability to perform even sedentary work." *Id.* at 831. They expressed that Badillo "drops objects, that he experiences pain with sitting or standing too long and that he absolutely can't lift." *Id.* These opinions, according to the ALJ, were "inconsistent with objective clinical findings from [Dr. Leff's and Dr. Ji's] examinations, as well as those from Dr. Cammissa and Dr. Cohen, indicating some decreased motion, tenderness and muscle spa[s]m, but no muscle atrophy or significant motor loss, reflex loss or sensory loss." *Id.* at 832. The ALJ also found that these opinions were inconsistent with findings from imaging studies. *Id.* The ALJ sent requests for clarification to these physicians, but they failed to respond. *Id.* at 832.

In contrast, the ALJ gave "great evidentiary weight" to the medical interrogatory from Dr. Axline, an orthopedic expert who provided an assessment of Badillo's impairments and his functional limitations. *Id.* The ALJ found that this opinion was "highly detailed and cites to direct evidence in the record." *Id.* He also found that it was "consistent with the lack of significant findings from the neurological examinations by Dr. Heise, as well as the absence of muscle atrophy." *Id.*

**D. The R&R**

On November 7, 2019, Judge Fox issued an R&R recommending that the Court grant Badillo's motion for judgment on the pleadings, deny the Commissioner's motion, and remand the case solely for the calculation of benefits. Doc. 21. First, Judge Fox found that the ALJ erred in his consideration of Dr. Axline's opinion. *Id.* at 15–16. He found that the ALJ "failed to identify the evidence with which Dr. Axline's opinion was consistent, 'the results on imaging studies' and 'the examinations in progress notes.'" *Id.* at 16. Moreover, the R&R found that the ALJ "did not assess weight in connection with Dr. Heise or Dr. Cohen, both Badillo's treating sources, nor did he explain or give a good

9

reason for not weighing the opinions of Dr. Heise and Dr. Cohen, as required by the regulations." *Id.* He found that affording "great weight to Dr. Axline's opinion because it is 'consistent with the lack of significant findings from the neurological examinations by Dr. Heise, as well as the absence of muscle atrophy,' while failing to weigh Dr. Heise's opinion without explaining or giving good reason was an error of law." *Id.*

Next, Judge Fox found that "giving Dr. Axline's opinion great weight because it was consistent with 'the claimant's reported activities of daily living,' while rejecting Dr. Edynak's opinion because 'it appears to rely solely on the claimant's self-report,' is inconsistent and constitutes an error of law." *Id.* Judge Fox noted that "the ALJ found Badillo's allegations of debilitating symptoms 'not wholly persuasive nor consistent with the evidence in the record,'" and "used his adverse credibility finding as a basis for assigning both great weight to Dr. Axline's opinion and minimal weight to Dr. Edynak's opinion." *Id.*

Third, Judge Fox found that "giving 'very little weight' to the opinions of Dr. Leff and Dr. Ji because they were inconsistent with the discredited opinion of Dr. Cammissa is an error of law because it is not a good reason for not according controlling weight to treating sources and is contrary to the regulations." *Id.* at 17.

Judge Fox also found that "the ALJ failed to assess medical evidence anew" and "failed to consider the opinions of treating and nontreating sources," in light of Dr. Axline's finding that Badillo's right shoulder is "limited to 90 [degrees] abduction on some physical exams." *Id.* at 17. He also "failed to assess anew medical evidence with respect to Badillo's cubital tunnel syndrome and his ability to handle and finger with right hand and wrist." *Id.* at 18. Indeed, Judge Fox noted that "the ALJ repeated verbatim large sections of the residual functional capacity finding from the January 2, 2014 opinion, which was vacated, suggesting the lack of an assessment of residual functional capacity anew, by the ALJ." *Id.* at 17–18.

Because "the ALJ failed to assess medical evidence anew and to provide a good reason for not giving controlling weight to the opinions of treating sources," Judge Fox found that "the ALJ's residual functional capacity determination is not supported by substantial evidence." *Id.* at 18. He then found, based on the circumstances, that remand was appropriate for the limited purpose of calculating benefits. *Id.*

## II. STANDARD OF REVIEW

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a denial of disability benefits, however, the Court may not determine *de novo* whether an individual is disabled. Rather, the Court may only reverse the ALJ's determination if it is based upon legal error or is not supported by substantial evidence. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the ALJ's findings as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). If, on the other hand, the ALJ's determination is not supported by substantial evidence or contains legal error, the determination must be reversed or remanded. *Rosa*, 168 F.3d at 77.

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may file specific written objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C). The district court may adopt those parts of the report

and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

Objections must be "specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Where a party's objections are "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," the district court will only review the R&R for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (internal quotation marks and citation omitted); *see also Hernandez v. Comm'r of Soc. Sec.*, No. 13 Civ. 5625 (PAE) (DF), 2015 WL 5122523, at *2 (S.D.N.Y. Aug. 31, 2015), *aff'd*, 669 F. App'x 599 (2d Cir. 2016). That is because "parties are not to be afforded a 'second bite at the apple' when they file objections to a Report and Recommendation." *Camardo v. Gen. Motors Hourly–Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).

## III. DISCUSSION

The Commissioner raises five objections to the R&R: (1) that the ALJ did not have to assign weight to the findings of Dr. Heise and Dr. Cohen, as these doctors did not provide medical opinions; (2) that the ALJ did not improperly use an "adverse credibility finding" in weighing the opinions of Dr. Axline and Dr. Edynak; (3) that the ALJ properly found that the opinions of Drs. Leff, Ji, and Cammisa were inconsistent with Dr. Cammisa's and Dr. Cohen's treatment notes; (4) that the ALJ's RFC finding was supported by substantial evidence; and (5) that even if the ALJ's decision is not affirmed, the proper remedy is remand for further administrative proceedings. The Court will consider each of these objections in turn.

### A. Dr. Heise and Dr. Cohen

The R&R found that the ALJ did not assess weight in connection with Dr. Heise or Dr. Cohen, both Badillo's treating sources. As a consequence, it found that the ALJ

erred by giving great weight to Dr. Axline's opinion because it is consistent with the lack of significant findings from the neurological examinations by Dr. Heise, as well as the absence of muscle atrophy, while failing to weigh Dr. Heise's opinion. The Commissioner argues that the ALJ acted properly because there was no medical opinion from either Dr. Heise or Dr. Cohen for the ALJ to weigh. The Court agrees and finds that the ALJ did not commit legal error by failing to specifically describe what weight he afforded to the objective medical tests and treatment notes of Dr. Heise and Dr. Cohen.

Under the relevant regulations, 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1), "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." As other courts in this district have recognized, "[t]he results of objective tests, including 'any clinical or diagnostic techniques,' are not medical opinions." *Bailey v. Berryhill*, No. 15 Civ. 9287 (LTS) (RLE), 2017 WL 1102671, at *2 (S.D.N.Y. May. 24, 2017) (quoting *Peach v. Astrue*, No. 08 Civ. 0741 (FJS), 2009 WL 7113220, at * 5 (N.D.N.Y. Dec. 3, 2009)). They also differ from "treatment notes," which merely "describ[e] the results of examinations and medical tests, and describe[e] treatments and treatment plans." *Id*. They instead "must reflect a judgment 'with regard to the nature and severity of plaintiff's limitations beyond a mere diagnosis and description of symptoms.'" *Id*. (quoting *Merriman v. Comm'r of Soc. Sec.*, No. 14 Civ. 3510 (PGG) (HBP), 2015 WL 5472934, at *20 (S.D.N.Y. Sept. 17, 2015)).

The records from Dr. Cohen consist of reports of two surgeries, as well as treatment notes with only descriptions of Badillo's symptoms and diagnoses. Doc. 13 at 235, 267-69, 364, 664, 751–758, and 781–82. In addition, Dr. Heise's treatment notes consist mostly of diagnoses, descriptions of Badillo's symptoms, results of medical tests, and treatment plans. *Id.* at 391–396. Because the records of Dr. Heise and Dr. Cohen do not contain judgments about the nature and severity of Badillo's impairment, they are not

13

medical opinions. In any event, Badillo does not cite a specific statement from either Dr. Heise or Dr. Cohen that he claims to be a medical opinion. Because the ALJ's decision included a thorough discussion of these records—and there is no claim that this discussion was factually incorrect—the ALJ's failure to assign a weight to these notes would be, at most, harmless error. *Peach*, 2009 WL 7113220, at *6 (finding the Commissioner's failure to assign weight to treatment note opinions to be harmless error, where the decision included a thorough discussion of the treatment notes and Plaintiff did not articulate how the decision conflicted with the notes).

Accordingly, the ALJ did not commit legal error by failing to weigh the medical opinions of Dr. Heise or Dr. Cohen.

### B. Dr. Axline and Dr. Edynak

Next, the Commissioner argues that it was "clear error for the Magistrate Judge to state that the ALJ used an adverse credibility finding as a basis for assigning both great weight to Dr. Axline's opinion and minimal weight to Dr. Edynak's opinion." Doc. 24 at 5 (internal quotation marks and citation omitted). The Court agrees with the Commissioner that credibility findings are improper under the Act.[2] *See* SSR 16–3p. However, this does little to explain the inconsistency between the ALJ's reliance on Badillo's subjective allegations when they supported Dr. Axline's findings, and his repudiation of them when they would have supported Dr. Edynak's. Neither the ALJ nor the Commissioner explain this discrepancy.

Moreover, as Badillo notes, the ALJ's evaluation of Dr. Axline's opinion was improper for other reasons. First, it was inappropriate to use Dr. Axline's opinion to discredit, at least in part, the opinions of Dr. Leff and Dr. Ji. *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the

---

[2] The Court is not entirely convinced, however, that the ALJ did not make such a credibility finding. In particular, the Court fails to see the pertinence of the ALJ's remark that Badillo's "retirement pension may reduce his motivation to seek further employment." Doc. 13 at 831.

14

opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis."). As discussed below, however, there was additional substantial evidence to discount these opinions, and so, this error was harmless. Second, as that of a non-examining medical expert, Dr. Axline's opinion was not entitled to the "great weight" that it was afforded by the ALJ. *See Vargas v. Sullivan*, 898 F.2d 293, 295–96 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.") (internal quotation marks and citations omitted). The Court is unaware of the ultimate impact this opinion—which stated that Badillo "could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; sit at least for a total of 6 hours; and stand and/or walk at least 4 hours each; but should never reach overhead with the right upper extremity in an eight-hour workday"—had on the ALJ's RFC assessment, as it appears to be one of the only affirmative findings of functionality. Doc. 13 at 832. As such, on remand, the ALJ should consider the appropriate weight to give Dr. Axline's findings.

### C. Dr. Leff, Dr. Ji, and Dr. Cammissa

Third, the R&R found that the ALJ's decision to give very little weight to the opinions of Dr. Leff and Dr. Li because they were inconsistent with the discredited opinion of Dr. Cammissa was an error of law. Doc. 21 at 17. The Commissioner argues that the R&R erroneously confuses the medical opinions of the treating doctors with their examination findings and treatment notes. Specifically, the Commissioner notes that the ALJ gave very little weight to the opinions of Dr. Leff and Dr. Ji not because they were inconsistent with any opinion rendered by Dr. Cammissa, but because they were "inconsistent with objective clinical findings from not only their own treatment notes," but also from Dr. Cammissa's *treatment notes*.

15

The Court agrees with the Commissioner that the R&R conflates Dr. Cammissa's treatment notes with his medical opinion. Moreover, even treating opinions need not be given significant weight when there is "substantial evidence that the opinion is contradicted by other evidence." *Monette v. Astrue*, 269 F. App'x 109, 113 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). While these treatment notes may be read as consistent with his position that he was disabled, they may also be read to support the Commissioner's position. As such, substantial evidence existed for the ALJ's decision to afford them little weight.

### D. Substantial Evidence

Finally, the Commissioner argues that the ALJ's decision was supported by substantial evidence. Specifically, the Commissioner takes issue with the R&R's statement that the ALJ's decision failed to assess the RFC anew because it "repeated verbatim large sections of the residual functional capacity finding from the January 2, 2014 opinion, which was vacated." Doc. 21 at 17–18. It is irrefutable that the ALJ did, indeed, copy large swaths of the previous opinion. *Compare* Doc. 13 at 828–30 *with* Doc. 13 at 889–90. But the Court notes that, contrary to the R&R, the ALJ did include some new analysis, particularly with regard to its evaluation of Dr. Edynak's opinion. Indeed, as the Appeals Council instructed on remand, the ALJ paid particular attention to Badillo's inability to reach overhead. Doc. 13 at 916–17. The Court is also unconvinced that the ALJ's findings are "internally contradictory and inconsistent." Doc. 21 at 18. And contrary to Badillo's assertion that the ALJ "cherry-picked" with regard to the record evidence, the ALJ consistently explained his decisions where he accepted opinions only in part. *See, e.g.*, *Howe v. Colvin*, No. 12 Civ. 6955 (JPO) (SN), 2013 WL 4534940, at *14 (S.D.N.Y. Aug. 27, 2013) ("[A]n ALJ is not required to accept or reject a medical opinion in its entirety.").

This does not mean, however, that the ALJ's decision was necessarily supported by substantial evidence. "In sum," the ALJ states that the substantial evidence on which

16

he relied was namely the "*absence* of evidence" and a "*lack* of positive findings" in the treatment notes of Drs. Leff, Ji, Cammissa, Cohen, and Heise. Doc. 13 at 833 (emphasis added). Having assigned little or no weight to the opinions of all of Badillo's treating sources—and inappropriately put too much weight on that of Dr. Axline—the ALJ had little affirmative evidence on which to rely in making his assessment. The ALJ requires "affirmative evidence demonstrating [a claimant's] residual functional capacity." *Rosa*, 168 F.3d at 81. "[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

### E. Remand for Further Administrative Proceedings

Finally, the Commissioner argues that, even if the ALJ did commit legal error, the appropriate remedy is remand for further administrative proceedings, rather than for the calculation of benefits. The Court agrees. This case has had a long and protracted procedural history. However, its record is not so clear so as to assure the Court of Badillo's disability under the Act. As such, "remand for further development of the evidence is the wiser course." *Rosa*, 168 F.3d at 83.

## IV. CONCLUSION

For the foregoing reasons, Judge Fox's R&R is adopted in part and rejected in part. Badillo's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted, and the case is remanded to the Commissioner of Social Security for further proceedings. In particular, the Commissioner should reconsider the appropriate weight to afford Dr. Axline's opinion, as well as ensure that any RFC assessment is supported by substantial affirmative record evidence. The Clerk of Court is respectfully directed to termination the motions, Docs. 14, 18, and to close the case.

It is SO ORDERED.

Dated: March 31, 2020
New York, New York

EDGARDO RAMOS, U.S.D.J.